**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

COCHRANE USA, INC.                                    :
1012 14th Street, N.W., Suite 1400
Washington, D.C.                                           :

      Plaintiff,                                            :

v.                                                                      :
                             Case No.
LUSIO FILIBA                                               :
1778 Willard Street, N.W., Suite 1
Washington, D.C.                                           :

And                                                               :

BEAR MOUNTAIN, LLC                            :
1778 Willard Street, N.W., Suite 1
Washington, D.C.                                           :

Serve On:  Resident Agent                          :
LUSIO FILIBA
1778 Willard Street, N.W., Suite 1            :
Washington, D.C.
                                                                        :
      Defendant.
   *    *    *    *    *    *    *    *    *    *    *    *

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND
REQUEST FOR _EX PARTE_ SEIZURE ORDER UNDER 18 USC 1836**

     Cochrane USA, Inc. Plaintiff ("Cochrane"), by and through its undersigned counsel,

Geoffrey Washington and Adelberg, Rudow, Dorf, & Hendler, LLC, hereby files this Verified

Complaint and Request for _Ex Parte_ Seizure Order Under 18 USC §1836, and as grounds states

as follows:

**<u>NATURE OF THE CASE</u>**

     1.    This case involves a stunning betrayal and theft of valuable proprietary and

confidential information by Lusio Filiba  ("Filiba"), Cochrane's former Territory Manager for

the United States and Canada. Filiba secretly and without authorization downloaded and stole, for his own use and gain, as well as that of Bear Mountain LLC, his wholly owned and operated limited liability company, hundreds of computer files containing Cochrane's sensitive proprietary and confidential data maintained on its computer systems, including Cochrane's patented designs for sophisticated security fencing systems, project specifications and project documents, project cost data and analyses, bids, bid pricing data, contact lists, project proposals, among other sensitive and confidential material (" Cochrane Data"). Filiba hurriedly resigned his position after Cochrane management confronted him upon learning from a potential client to whom Cochrane had submitted a bid for a valuable project, a bid on which Filiba had worked, that Filiba had submitted **his own bid for the work while in the employ of Cochrane**. A post-resignation forensic analysis of Filiba's Cochrane-provided computer revealed that Filiba commenced a shockingly large data theft of the Cochrane Data in the days surrounding his resignation wherein he transferred hundreds of files from Cochrane's secure servers to his Cochrane-provided laptop and then to his own thumb drives. Cochrane has screenshots and images of data transferred by Filiba to a web-based data storage site maintained by Filiba for his personal use to the exclusion of Cochrane.  Filiba, a foreign national, formed his own company, Bear Mountain, LLC a District of Columbia limited liability company ("Bear") and has used the Cochrane Data to contact and solicit Cochrane's customers and submit bids for work under Bear's and Filiba's names **using Cochrane's designs and pricing data**. Filiba and Bear remain in possession of the stolen Cochrane Data in violation of the Defend Trade Secrets Act, 28 U.S.C. §1831 *et seq*, despite Cochrane's demand for its return . An *ex parte* seizure order by this Court is the only adequate remedy to prevent Filiba and Bear from secreting the Cochrane Data beyond this Court's jurisdiction and continuing to breach Filiba's fiduciary duties to Cochrane.

2

## THE PARTIES

2.      Cochrane is a subsidiary of Cochrane Industries, Ltd. and a Delaware corporation engaged internationally in the business of the design, fabrication, and installation of sophisticated perimeter security fencing systems for businesses, utilities, and governments across the world. Cochrane has offices across the globe, including its office in Washington, D.C. located at 1012 14th Street, N.W., Suite 1400.

3.      Filiba is an Israeli national residing in Washington, D.C. with a last known address of 1778 Willard Street, N.W., Suite 1 Washington, D.C.

4.      Bear is a District of Columbia limited liability company with the same address as Filiba. Upon information and belief, Filiba wholly owns and operates Bear.

## JURISDICTION AND VENUE

5.      Jurisdiction and venue are proper in this Court because of Federal Question Jurisdiction by virtue of Cochrane's claims under 18 USC §1836(b)(2). Filiba and Bear reside in Washington D.C.

## FACTS COMMON TO ALL COUNTS

6.      In or around 2002, Lex Cochrane ("Lex") met Filiba, who was working as a manager of a pizza restaurant in South Africa. After striking up a relationship with Filiba, Lex, impressed with Filiba's drive and business sense, decided to bring Filiba on with Cochrane. Filiba began work for Cochrane as a sales agent. As the years went by, Cochrane provided Filiba, who to that time had limited experience in business let alone experience with an international industry leader, with opportunities for advancement and shared Cochrane's confidential trade secrets with him. Filiba continued under Lex's tutelage, learning a completely new trade and industry.

3

7.     Filiba's positions were in sales, where his personality was a natural fit for business development and nurturing Cochrane's relationships with its vendors and customers. Filiba rose to become Cochrane's Territory Manager, USA and Canada, responsible for overseeing Cochrane's business development in the United States and Canada.

8.     As Regional Manager, Filiba regularly communicated with Cochrane's customers and suppliers and participated in the submission of Cochrane's bids for various international projects. Filiba had access to Cochrane's internal cloud-based computer network, which stored Cochrane's various project documents and other sensitive material, including the Cochrane Data"). The Cochrane Data was not generally accessible and Cochrane restricted access to only members of Cochrane's project teams.

9.     One of the project bids with which Filiba assisted was a project for the New Jersey District Water Supply Commission ("Commission") for the "sole source" installation of Cochrane's patented perimeter security system designs built to certain specifications and requirements. Such security system designs are patented in the United States.

10.    Filiba was involved for over a year in the development of Cochrane's bid, conducting meetings with Commission personnel and other government officials and communicating internally with Cochrane's design and engineering team.

11.    In this way, Filiba gained knowledge of Cochrane's proprietary designs, project cost data and bid pricing information, including the Cochrane Data. Filiba did not just obtain this knowledge on this specific project, but also on scores of other projects on which he assisted for Cochrane, including Federal Express among other Cochrane customers.

12.    During the process of developing this potential bid opportunity with the Commission, the Commission repeatedly came back to Cochrane seeking price reductions on

4

Cochrane's quoted offer after discussions with Filiba. After initially submitting its quoted offer for the Commission's project, Cochrane submitted revised quotes in November 2016, January 2017, and three times in October 2017. In retrospect, upon information and belief, Filiba was counseling the Commission to press for price reductions from Cochrane, in violation of his fiduciary duties owed to Cochrane.

13.     Filiba, in his role as Territory Manager for North America, also was responsible for the retention of a physical box of business cards of Cochrane business contacts he met with in furtherance of Cochrane's business. The contacts were not publicly available and were to be confidentially retained on behalf of Cochrane for development of Cochrane's business in competition with other companies vying for the business which Cochrane sought out.

14.     Throughout 2017, Cochrane experienced issues with Filiba's performance. Filiba was no longer attaining the productivity which Cochrane had come to expect based upon his prior level of performance. In addition, as part of his available benefits which Cochrane made available to Filiba in performance of his duties on behalf of Cochrane, Filiba was eligible for reimbursement of certain expenses which Filiba claimed were incurred as part of his job. Between March 2017 and November 2017, Cochrane provided reimbursement to Filiba of $33,000 for expenses which Filiba claimed he incurred, but which upon post-resignation examination reveals were unverified.

15.     In November 2017, matters came to a head which led to Filiba's sudden resignation from Cochrane. This course of events finally revealed Filiba's duplicity and breach of the fiduciary obligations of loyalty and fidelity which he owed to Cochrane.

16.     On the morning of Friday, November 24, 2017, Filiba, using Cochrane's computer system, emailed Cochrane's point of contact with the Commission to offer his

5

"proposal for the supply of the required security fencing upgrade the commission requires." **Exhibit 1**. Filiba touted that his offer "provides all the required materials to compete the required scope of works." Filiba submitted his offer on behalf of Bear, the limited liability company which Filiba formed on November 22, 2017, in the District of Columbia. Filiba was still in the employ of Cochrane at this time and being compensated as such. Indeed, later that same day, Filiba sent an email to one of Cochrane's contacts at a fence installation contractor, on behalf of Cochrane, forwarding specifications and requirements for a project the companies were working on together.

17.     Because of Filiba's access to the confidential discussions with the Commission on behalf of Cochrane, Filiba had access to the Commission's specifications and requirements, information which was not otherwise generally available. Filiba also had access to all of the materials included with Cochrane's quoted offer, including the materials proposed to be used by Cochrane in doing the work and Cochrane's internal pricing for the project and its quoted price, as well as other details in Cochrane's otherwise confidentially submitted quoted offer. Filiba, in making his own offer on behalf of his newly formed company, Bear, submitted a quoted offer substantially lower than Cochrane's and utilizing different materials than included in Cochrane's quoted offer. Filiba utilized his knowledge of Cochrane's quote and discussions with the Commission to form an offer on behalf of Bear, **all actions done while a Cochrane employee**.

18.     On the morning of Monday, November 27, 2017, Cochrane's contact with the Commission forwarded Filiba's email to another contact within Cochrane, Jonathan Mishoe, who confronted Filiba about whether he had submitted the bid and whether he had left Cochrane. Filiba denied that he had stopped working for Cochrane.

19.     Despite his earlier denial, Filiba subsequently sent Lex an email submitting his resignation, but back-dated the resignation to November 24, 2017.  **Exhibit 2**.

20.     Upon tendering his resignation, Filiba surrendered his Cochrane issued laptop. Cochrane subsequently sent the laptop, a MacBook Pro, to Ricoh USA for forensic analysis.

21.     At the time of his resignation, Filiba removed from Cochrane's offices the box of business cards and contacts of Cochrane's customer and vendor contacts which he had retained for Cochrane in his position as Territory Manager. ("Cochrane Cards")

22.     Cochrane immediately began an investigation into Filiba's activities. Upon review of Filiba's activities on Cochrane's email servers, it was discovered that on or about November 8, 2017 Filiba had transferred over 100 files to a private third-party cloud-based file storage site. Cochrane knows that Filiba transferred these files because of confirmatory emails to Filiba's Cochrane email inbox from the cloud-based file storage site which Filiba used, Hightail, confirming that the files had been uploaded to Filiba's personal account. **Exhibit 3**. The files transferred were not Filiba's personal materials but were instead included the Cochrane Data which Filiba obtained through unauthorized downloading of those files and transferring them outside of Cochrane's possession to a third-party cloud storage site under the exclusive control of Filiba.

23.     On November 28, 2017, Cochrane was alerted by one of its business partners that Filiba had contacted it in solicitation of business for the installation of perimeter fencing for Federal Express facilities. Filiba offered the products for the project—which he sources through a competitor of Cochrane's—at a purported "40% savings" in material costs and further savings on installation costs as well. **Exhibit 4**. This is a direct breach of Filiba's duties of fidelity, loyalty and confidentiality and misappropriates Cochrane's trade secrets. Filiba was provided

7

access to Cochrane's project cost data in furtherance of Cochrane's business. Filiba, while a Cochrane employee, downloaded Cochrane's documents and transferred them to his own cloud-storage site, into the possession of Bear, his alter-ego limited liability company, and then used that information to compete with Cochrane.

24.     Further investigation has revealed that Filiba's tortious behavior extends well beyond this theft of Cochrane's confidential documents. Beginning at least approximately ten days prior to his resignation, Filiba commenced a significant theft of Cochrane's confidential and sensitive information. Forensic examination of Filiba's company provided laptop by an outside forensic examiner has revealed that during this period, Filiba downloaded and transferred scores of files and gigabytes of data from Cochrane's servers to Filiba's personal removable thumb drives. This activity continued up until the day of Filiba's actual resignation on November 27, 2017. **Exhibit 5**, Conners Declaration.

25.     Filiba's company provided laptop contains evidence of other alarming and harmful activity by Filiba. Several of the files formerly contained on Filiba's company provided laptop, and now likely on the thumb drives and devices in the possession of Filiba and Bear, were Cochrane files and bore names associated with Cochrane projects, including Federal Express and the Commission. However, Filiba saved these documents in a directory under the name Kosedag. Kosedag is the name of a Turkish based competitor of Cochrane.

> E:\Kosedag\Fedex Freight Center\C__Users_mvwyk_Desktop_FedEx Nogales - BASE (to FXF) BOM Layout1 (1).pdf
> E:\Kosedag\Venango Street Facility\38.MST.VSF.SR.38 (03.10.2017) Venango.pdf
> E:\Kosedag\Guaynabo Prison\Guaynabo Prison Puerto Rico.pdf
> E:\Kosedag\Milwaukee Bucks
> E:\Kosedag\North Jersey\446.LF.NJW.LB.446E (16.10.2017) North Jersey.pdf

26.     On that same morning, Filiba, in an attempt to destroy evidence of his misappropriation and breach of his fiduciary duties to Cochrane, opened the Google Chrome application on his Cochrane provided computer and searched for "reset pc to factory settings windows 10". **Exhibit 5**, Conners Declaration, paras. 4-7. Using this information, Filiba then ran a re-installation of the Windows operating system on the laptop. *Id*. This had the effect of erasing all of the data within the Windows operating system. *Id*.

27.     However, the laptop automatically created a list of all files overwritten in this factory reset process. *Id*. Recovered from this list of files, were the Cochrane Data, among other files. *Id*. Appallingly, data recovered from the laptop also shows hundreds of instances of file copying of that same Cochrane proprietary and confidential material from the laptop to removable media devices personally owned by Filiba. *Id*. at para. 8.

28.     All of this misappropriation occurred while Filiba was a Cochrane employee.

29.     On or about December 14, 2017, Cochrane, through its counsel, sent a letter to Filiba and Bear demanding that they cease and desist from making certain representations on Bear's website. **Exhibit 6**. Specifically, Bear and Filiba represented that Filiba had over 20 years of experience within the fencing system industry and had worked on several projects for customers who were customers of Cochrane's. Moreover, Filiba only came to work for Cochrane, his first experience in the fencing system industry in or around 2004, much less than 20 years. Thus, the reference regarding Filiba's and Bear's "experience" was a reference to **Cochrane's** experience. The references to specific projects were Cochrane projects Filiba had little to no involvement with and was again a misrepresentation referring to Cochrane's customers yet claiming them as Bear's and Filiba's.

30.     Upon receipt of the letter from Cochrane, Filiba and Bear deleted the offending references from Bear's website. **Exhibits 6 and 7**,

31.     The same letter also demanded return of the Cochrane Data. Cochrane advised Filiba and Bear that Cochrane knew of Filiba's misappropriation via transfer of Cochrane's files to Filiba's cloud-based storage accounts. Filiba and Bear did not respond to the letter nor turn over the Cochrane Data as demanded.

### COUNT ONE: MISAPPROPRIATION OF TRADE SECRETS – TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTION (FILIBA AND BEAR) DC ST §36-401, *et seq*

32.     Paragraphs 1-31 are incorporated by reference thereto as if fully set forth herein.

33.     The Cochrane Data and Cards were not generally known to by others outside of Cochrane and Cochrane employed measures, including restricting access to such data, to maintain its confidentiality.

34.     The Cochrane Data and Cards are valid trade secrets.

35.     At all times relevant hereto, while in Cochrane's employ, up to and including November 27, 2017, Filiba had a fiduciary duty to maintain the confidence reposed in him by Cochrane, including preserving the confidentiality of the Cochrane Data and Cards.

36.     Filiba misappropriated the Cochrane Data and breached his fiduciary duties of fidelity and loyalty to Cochrane through the unauthorized downloading of the Cochrane Data and transferring that proprietary and confidential information to his own personal removable devices and cloud-based file storage sites, outside of the reach, possession, and control of Cochrane for his own use and the use of Bear in order to directly compete against Cochrane. Filiba also breached his fiduciary duties and misappropriated the Cochrane Cards when he removed them

from Cochrane's offices for his own use and Bear's use to compete against Cochrane. All of these acts were done by Filiba during his employment with Cochrane.

37.     At the time of this misappropriation, Filiba knew he had an obligation to maintain the confidentiality of the Cochrane Data and Cochrane Cards. Filiba has further transferred that sensitive and confidential data to the possession and custody of Bear, wholly owned and operated by Filiba. Upon information and belief, Filiba is Bear's only employee. Bear misappropriated the Cochrane Data and Cards inasmuch as it knew that Filiba had obtained possession of the Cochrane Data through improper means.

38.     Cochrane did not expressly nor impliedly consent to Filiba's downloading and transferring of the Cochrane Data or his misappropriation of the Cochrane Cards.

39.     The actions by Filiba and Bear were willful and malicious.

40.     Cochrane is substantially likely to succeed in a trial upon the merits in this case. Cochrane's evidence of Filiba's breaches of his fiduciary duties and rampant theft of the Cochrane Data is very strong and conclusive. Filiba has been caught with photographic and forensic proof of his hand in the proverbial cookie jar. Further, Filiba began his competition against Cochrane while in Cochrane's employ using the very confidential information and data entrusted to him by Cochrane in furtherance of Cochrane's business. Filiba transferred this information to Bear, during his employment, and Bear and Filiba continue to use this confidential information in direct competition with Cochrane, including contacting Cochrane customers and offering those customers work at purportedly less cost than offered by Cochrane.

41.     Filiba and Bear must be temporarily retrained, preliminarily and permanently enjoined from continuing to misappropriate Cochrane's trade secrets.

4818-2364-2456, v. 1

42.     As owner of a valid trade secret misappropriated by Filiba and Bear, Cochrane is entitled to injunctive relief under the District of Columbia Uniform Trade secrets Act. DC ST §36-401, *et seq*.

43.     Because Filiba may disseminate the Cochrane Data further, or continue to deprive Cochrane of the Cochrane Cards, or destroy them, money damages are insufficient to remedy Cochrane's potential loss. Moreover, Cochrane may never fully know or quantify the damage done by Filiba by depriving Cochrane of potential business and business opportunities. At all times, Filiba had an obligation to retain the confidences reposed in him by Cochrane and maintain the confidentiality of the Cochrane Data.

44.     The protection necessary to remedy Filiba's breaches of fiduciary duty do not merely extend to a return of the Cochrane Data and Cochrane Cards because of the potential for memorization of the knowledge gained through his access of the Cochrane Data and Cochrane Cards.

45.     An injunction is in the public interest, as protection for Cochranes trade secrets are set forth in the District of Columbia's Uniform Trade Secrets Act.

WHEREFORE, Cochrane USA respectfully requests that this Court enter judgment in an amount not less than two times the amount of $75,000.00, award it the attorney's fees incurred in bringing this action, and grant a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction:

A.     Compelling Lusio Filiba and Bear Mountain Security, LLC to return the Cochrane Data and Cards to Cochrane;

B.     Permit a forensic inspection of all email and cloud-based storage accounts, including providing the user name and password information necessary to access such accounts,

to ascertain whether any Cochrane Data is located within such accounts and permit the removal of all such Cochrane Data contained in such accounts;

C. Enjoin Filiba and Bear from contacting any Cochrane customers;

D. Enjoin Filiba and Bear from contacting any company or individual identified in the Cochrane Cards.

## COUNT TWO: BREACH OF FIDUCIARY DUTY (FILIBA)

46. Paragraphs 1-31 are incorporated by reference thereto as if fully set forth herein.

47. At all times relevant hereto, Filiba had fiduciary duties to Cochrane while in Cochrane's employ. Those duties included the duty to keep confidential the confidential and sensitive information he was provided with access to and to avoid any self-interest and other conflicts of interest.

48. Filiba breached those duties.

49. Filiba breached those duties by forming an entity, Bear, to compete with Cochrane while in Cochrane's employ. By transferring the confidential Cochrane Data to his own personal media devices and sharing that information with Bear, including the formation and submission of quoted offers to Cochrane's customers for the same jobs which Cochrane had offered bids for, and not sharing with Cochrane any other potential opportunities which he had developed for Bear or simply not sought for Cochrane—all while being paid a salary by Cochrane.

50. Filiba further breached those duties by pursuing his own self-interest in competing with Cochrane by directly submitting bids and offers for work also sought by Cochrane.

51. Cochrane has or will likely be damaged in an amount not less than $75,000.00.

52.     Cochrane is substantially likely to succeed in a trial upon the merits in this case. Cochrane's evidence of Filiba's breaches of his fiduciary duties and rampant theft of the Cochrane Data is very strong and conclusive. Filiba has been caught with photographic and forensic proof of his hand in the proverbial cookie jar. Further, Filiba began his competition against Cochrane while in Cochrane's employ using the very confidential information and data entrusted to him by Cochrane in furtherance of Cochrane's business. Filiba transferred this information to Bear, during his employment, and Bear and Filiba continue to use this confidential information in direct competition with Cochrane, including contacting Cochrane customers and offering those customers work at purportedly less cost than offered by Cochrane.

53.     Filiba must be temporarily retrained, preliminarily and permanently enjoined from continuing to misappropriate Cochrane's trade secrets.

54.     Because Filiba may disseminate the Cochrane Data further, or continue to deprive Cochrane of the Cochrane Cards, or destroy them, money damages are insufficient to remedy Cochrane's potential loss. Moreover, Cochrane may never fully know or quantify the damage done by Filiba by depriving Cochrane of potential business and business opportunities. At all times, Filiba had an obligation to retain the confidences reposed in him by Cochrane and maintain the confidentiality of the Cochrane Data.

55.     The protection necessary to remedy Filiba's breaches of fiduciary duty do not merely extend to a return of the Cochrane Data and Cochrane Cards because of the potential for memorization of the knowledge gained through his access of the Cochrane Data and Cochrane Cards.

56.     An injunction is in the public interest, as protection for Cochranes trade secrets are set forth in the District of Columbia's Uniform Trade Secrets Act.

WHEREFORE, Cochrane USA respectfully requests that this Court enter judgment in its favor in an amount not less than $75,000.00 and grant a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction:

A.      Compelling Lusio Filiba to return the Cochrane Data and Cards to Cochrane;

B.      Permit a forensic inspection of all email and cloud-based storage accounts maintained by Lusio Filiba, including providing the user name and password information necessary to access such accounts, to ascertain whether any Cochrane Data is located within such accounts and permit the removal of all such Cochrane Data contained in such accounts;

C.      Enjoin Filiba from contacting any Cochrane customers;

D.      Enjoin Filiba from contacting any company or individual identified in the Cochrane Cards.

### COUNT THREE REQUEST FOR <u>EX PARTE</u> SEIZURE ORDER

57.      Paragraphs 1-31 are incorporated by reference thereto as if fully set forth herein.

58.      The current circumstances are extraordinary and require entry of an *ex parte* seizure order by this Court.

59.      Filiba is an Israeli national who has misappropriated the trade secrets of Cochrane.

60.      It is beyond doubt conclusively shown that Filiba misappropriated the Cochrane Data. The screenshots confirming the file transfers to Filiba's cloud-based storage accounts, the forensic investigation showing the transfer of Cochrane Data to Filiba's media devices clearly evidence Filiba's theft of Cochrane's intellectual property.

61.      Moreover, because of the easy transportability of the Cochrane Data, combined with Filiba being a citizen of another country residing in this country, show a clear risk that

Filiba may secret the Cochrane Data beyond the reach of this Court. Filiba has international contacts, is a foreign national, and his entity, Bear, uses the source material of a Turkish company to sell its installation products.

62.     Injunctive relief under Rule 65 is likely to be inadequate because of the risk that the Cochrane Data may be placed outside of the jurisdiction of this Court. Only *ex parte* relief immediately seizing the Cochrane Data is appropriate. Such relief would merely restore the situation to what it should be following Filiba's resignation and preserves the status of the parties. Filiba is clearly not permitted to utilize Cochrane's trade secrets. Clearly, Filiba has done that and has furthered his business, Bear, in so doing. That is not proper and neither Bear nor Filiba have any right to do so.

63.     Seizure of the Cochrane Data, including any media devices (thumb drives, removable heard drives, computer servers, cell phones, and email/storage accounts) is necessary to prevent immediate and irreparable injury.

64.     The forensic investigation of the laptop formerly used by Filiba has revealed the serial numbers of the various media devices used by Filiba to copy the files from that computer. The descriptions provided by Cochrane's investigator of those devices, including their serial numbers, as well as the user name and password account information which Filiba should be compelled to provide for his email and cloud-based storage site accounts provide reasonable particularity to allow the efficient location and detention of the Cochrane Data.

65.     The balancing of the harms is in Cochrane's favor. The only harm to Filiba and Bear is that they no longer have Cochrane's Data to improperly and tortuously use to harm Cochrane's business. The continued deprivation of the Cochrane Data harms Cochrane's

business as its customer relationships are infringed upon by a competitor who gained the information by betrayal of his fiduciary duties owed to Cochrane.

66.     As set forth above, Cochrane is substantially likely to prevail at any trial upon the merits in this case. Conclusive proof of Filiba's betrayal of his fiduciary obligations has been offered by Cochrane.

WHEREFORE, Cochrane USA respectfully requests that this Court enter an *ex parte* seizure Order, directing the United States Marshall or other official of this Court to locate and detain the items and materials more specifically described in the Motion for *Ex Parte* Seizure Order contemporaneously filed with this Complaint.

Respectfully Submitted,

_____
Geoffrey W. Washington, Esq.,
Adelberg, Rudow, Dorf & Hendler, LLC
7 St. Paul Street, Suite 600
Baltimore, Maryland  21202-1612
Telephone: (410) 986-0850
Fax: (410) 986-0851
GWashington@Adelberg.com

Attorneys for Cochrane USA, Inc.

17

## **<u>VERIFICATION</u>**

I, DEVLIN BOSMAN, solemnly declare and affirm under the penalties of perjury, that the contents of this foregoing Verified Complaint and Request for *Ex Parte* Seizure Order Under 18 USC §1836 are true to the best of my knowledge, information and belief.

_____

Devlin Bosman,
Pure and Applied Mathematics
Departmental Manager – USA & Canada,
Cochrane USA, Inc.