**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                  )
COCHRANE USA, INC.                )
                                  )
            Plaintiff,            )
                                  )
      v.                          ) Civil Action No. 18-341 (EGS)
                                  ) UNDER SEAL
LUSIO FILIBA, et al.,             )
                                  )
            Defendants.           )
                                  )
_____)
```

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the Court is Cochrane USA, Inc.'s ("Cochrane") motion for *ex parte* seizure order under 18 U.S.C. § 1836 against Lusio Filiba and Bear Mountain, LLC (collectively "defendants"). Upon consideration of the motion, the argument of counsel at an *ex parte* hearing held February 28, 2018, the applicable law, and the entire record, the Court **DENIES** the request for an ex parte seizure order, but **GRANTS** the equitable relief set forth below.

I.    **Background**

A. **Procedural**

Cochrane filed a verified complaint for temporary restraining order and preliminary and permanent injunctive relief and request for *ex parte* seizure order pursuant to 18 USC § 1836 on

1

February 14, 2018. Compl., ECF No. 1. On the same date, Cochrane filed a separate *ex parte* motion for seizure order. Pl.'s Mem., ECF No 2. The case was not assigned to this Court until February 20, 2018. On February 28, 2018, the Court held a sealed *ex parte* hearing on Cochrane's motion. At the conclusion of the hearing, the Court informed Cochrane that it would not enter *an ex parte* seizure order, but would grant injunctive relief, and invited counsel to submit a proposed order. Cochrane filed a proposed order on March 5, 2018. Errata to *Ex Parte* Motion, ECF No. 8. Thereafter on March 7, 2018, Cochrane filed a declaration in response to the Court's Minute Order of March 7, 2018. Errata to *Ex Parte* Motion, ECF No. 9.

### B. Factual

The verified complaint contains the following allegations. Cochrane designs, fabricates, and installs "sophisticated perimeter security fencing systems for businesses, utilities, and governments across the world." Verified Compl., ECF No. 1 ¶ 2. Cochrane's former employee, Mr. Filiba, an Israeli national living in this country, while still in Cochrane's employ,

> secretly and without authorization downloaded and stole, for his own use and gain, as well as that of Bear Mountain LLC, his wholly owned and operated limited liability company, hundreds of computer files containing Cochrane's sensitive proprietary and confidential data maintained on its computer systems, including Cochrane's patented

> designs for sophisticated security fencing
> systems, project specifications and project
> documents, project cost data and analyses,
> bids, bid pricing data, contact lists, project
> proposals, among other sensitive and
> confidential material ("Cochrane Data").

*Id.* ¶ 1. Mr. Filiba "has used the Cochrane Data to contact and
solicit Cochrane's customers and submit bids for work under
defendants' names using Cochrane's Designs and pricing data."
*Id.*

On November 24, 2017, while still employed by Cochrane, Mr.
Filiba emailed to one of Cochrane's potential clients a proposal
on behalf of Bear Mountain. *Id.* ¶ 16. On November 27, 2017, the
potential client forwarded the proposal to another Cochrane
employee. *Id.* ¶ 18. When confronted about whether he was still a
Cochrane employee, Mr. Filiba stated that he was, but
subsequently sent a resignation via email which he back-dated to
November 24, 2017. *Id.* ¶¶ 18-19. After resigning, Mr. Filiba
surrendered his Cochrane-issued laptop, which Cochrane then sent
out for forensic analysis. *Id.* ¶ 20. On November 28, 2017, one
of Cochrane's business partners informed Cochrane that Mr.
Filiba contacted it to solicit business for Bear Mountain. *Id.* ¶
23.

When Mr. Filiba resigned, he "removed from Cochrane's
offices the box of Cochrane's customer and vendor contacts which
he had retained for Cochrane in his position as Territory

Manager ("Cochrane Cards").  *Id.* ¶ 21. Cochrane's immediate
investigation of Mr. Filiba's activities on Cochrane's servers
revealed that on or about November 8, 2017, Mr. Filiba
transferred Cochrane project documents and other sensitive and
confidential documents to a private third-party cloud based
storage site under the exclusive control of Mr. Filiba. *Id.* ¶
22. The forensic examination of Mr. Filiba's laptop computer
revealed that about 10 days prior to Mr. Filiba's resignation,
he downloaded and "transferred scores of files and gigabytes of
data from Cochrane's servers to [Mr.] Filiba's personal
removable thumb drives." *Id.* ¶ 24.

Mr. Filiba attempted to "destroy evidence" of transferring
the files by searching how to "reset pc factory settings windows
10" and then re-installing the windows operating system. *Id.* ¶
26. This was unsuccessful, however, because a list of all of the
files that had been overwritten was created as a result of the
reset. *Id.* ¶ 27. "Data recovered from the laptop also shows
hundreds of instances of file copying of that same Cochrane
proprietary and confidential material from the laptop to
removable media devices personally owned by [Mr.] Filiba." *Id.*

On or about December 14, 2017, Cochrane, through counsel,
sent a cease and desist letter demanding that defendants cease
and desist from making certain representations on the Bear

4

Mountain website, and that defendants did so. *Id.* ¶¶ 29-30. The same letter demanded return of the Cochrane Data, but defendants did not respond to the letter or return the data. *Id.* ¶¶ 29, 31.

## II.  Legal Standard

### A. Defend Trade Secrets Act

The Defend Trade Secrets Act of 2016 ("Act") provides trade secret owners certain federal legal protections, including under certain circumstances, the entry of an *ex parte* seizure order issued by a federal Court, and executed by the United States Marshal Service or other law enforcement. *See generally* 18 USC § 1836. To justify such an order in a civil case, the court is authorized to issue such an order "only in extraordinary circumstances[1]" or "to prevent the propagation or dissemination of the trade secret."  18 USC § 1836(b)(2)(A)(i).

The moving party must also provide specific facts in support of its application for such an order: specifically, the Act provides that "[a] court may not grant such an ex parte

---

[1]The Senate Judiciary Committee Report accompanying the bill which became the Act provides the following explanation in the section-by-section summary of the bill:  extraordinary circumstances are present when an injunction under existing rules of civil procedure are insufficient, and when a "defendant is seeking to flee the country or planning to disclose the trade secret to a third party immediately or is otherwise not amenable to the enforcement of the court's orders." S. Rep. No. 114-220, at 6 (2016).

application unless the court finds that it clearly appears from
specific facts that:

(1)  an order issued pursuant to Rule 65 of the
     Federal Rules of Civil Procedure or another form
     of equitable relief would be inadequate to
     achieve the purpose of this paragraph because
     the party to which the order would be issued
     would evade, avoid, or otherwise not comply with
     such an order;

(2)  an immediate and irreparable injury will occur
     if such seizure is not ordered;

(3)  the harm to the applicant of denying the
     application outweighs the harm to the legitimate
     interests of the person against whom seizure
     would be ordered of granting the application and
     substantially outweighs the harm to any third
     parties who may be harmed by such seizure;

(4)  the applicant is likely to succeed in showing
     that: (a) the information is a trade secret; and
     (b) the person against whom seizure would be
     ordered (i) misappropriated the trade secret of
     the applicant by improper means; or (ii)
     conspired to use improper means to
     misappropriate the trade secret of the
     applicant;

(5)  the person against whom seizure would be ordered
     has actual possession of: (a) the trade secret;
     and (b) any property to be seized;

(6)  the application describes with reasonable
     particularity the matter to be seized and, to
     the extent reasonable under the circumstances,
     identifies the location where the matter is to
     be seized;

(7)  the person against whom seizure would be ordered,
     or persons acting in concert with such person,
     would destroy, move, hide, or otherwise make such
     matter inaccessible to the court, if the
     applicant were to proceed on notice to such
     person; and

(8)  the applicant has not publicized the requested
     seizure."

18 USC § 1836(b)(2).

## B. Temporary Restraining Order

A plaintiff seeking interim injunctive must establish "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "Th[is] same standard applies to both temporary restraining orders and to preliminary injunctions." *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009). It is "an extraordinary and drastic remedy" and "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted). In this Circuit, the four factors have typically been evaluated on a "sliding scale," such that if "the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009).

In the wake of the Supreme Court's decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), "the D.C. Circuit has suggested that a positive showing on all four preliminary injunction factors may be required." *Holmes v. FEC*, 71 F. Supp. 178, 183 n.4 (D.D.C. Oct. 20, 2014); *see also Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) ("[W]e read *Winter* at least to suggest if not to hold that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.") (quotation marks omitted). Nonetheless, "the Circuit has had no occasion to decide this question because it has not yet encountered a post-*Winter* case where a preliminary injunction motion survived the less rigorous sliding-scale analysis." *ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 46 n.2 (D.D.C. 2014).

## III. **Discussion**

### A. **Ex Parte Seizure**

#### 1. **Cochrane has not satisfied the requirements for the issuance of an ex parte seizure order pursuant to 18 USC § 1836(b)(2)**

##### a. **Extraordinary circumstances are not present**

Cochrane argues that extraordinary circumstances are present because "as a foreign national, [Mr. Filiba] may likely attempt to place the Cochrane Data outside of the jurisdiction of the Court, if not flee the jurisdiction." Pl.'s Mem., ECF No. 2 at 11. At the *ex parte* hearing, Cochrane conceded that it did

not have any specific evidence that Mr. Filiba was seeking to
flee the country. Rough Hr'g Tr. 9:2-5. Cochrane contends that
Mr. Filiba already disseminated the data to a third party –
specifically his alter ego Bear Mountain. *Id*. 8:12-13.
Furthermore, Cochrane concludes, based on the manner in which
Mr. Filiba maintained his files on his Cochrane-issued computer,
that Mr. Filiba has or intends to disseminate the data to one of
Cochrane's competitors, a company known as Kosedag. *Id*. 9:6-
10:4. These assertions do not constitute "extraordinary
circumstances" required under the Act to justify issuing an *ex
parte* seizure order. There is no evidence that that Mr. Filiba
intends to flee the country. Furthermore, there is no evidence
that the data is going to be disseminated to Kosedag. Therefore,
the Court cannot find that "extraordinary circumstances" are
present here.

> **b. Cochrane has not provided specific facts from
> which the Court could find Filiba would evade,
> avoid, or otherwise not comply with an equitable
> order**

Cochrane points to two facts supporting its contention that
equitable relief would be inadequate: (1) Mr. Filiba's prior
attempt to destroy the evidence of his alleged theft of the
data, Pl.'s Mem., ECF No 2-1 at 11; and (2) Mr. Filiba's failure
to return the data in response to the December 14, 2018 demand
letter. *Id*. at 13. It is concerning that Mr. Filiba attempted to

cover up the alleged misappropriation, but without more specific facts in support, the Court cannot conclude that equitable relief would be inadequate. Because the Court cannot find that extraordinary circumstances are present nor that equitable relief would be inadequate, the Court does not need to discuss the remaining requirements for the issuance of an *ex parte* seizure order.

**B.   Temporary Restraining Order**

Although Cochrane has not demonstrated that extraordinary circumstances are present nor that equitable relief would be inadequate, both of which are required for the Court to enter an *ex parte* seizure order, it has demonstrated that the entry of a temporary restraining order is warranted.

The verified complaint contains three counts: (1) damages for misappropriation of trade secrets pursuant to D.C. Code § 36-401 *et seq.*; (2) breach of fiduciary duty; and (3) request for ex parte seizure order. Compl., ECF No. 1, ¶¶ 32-45; ¶¶ 46-56; ¶¶ 57-66. These counts are based on verified allegations that Mr. Filiba: (1) used his position as Territory Manager for the United States and Canada to gain knowledge of Cochrane's proprietary designs, project cost data and bid pricing information; (2) stole Cochrane Data by transferring it (a) to a private third-party cloud-based storage site, and (b) to his own

personal removable thumb drives; and (3) he used that
information to submit a proposal from Bear Mountain to a
potential client of Cochrane. *Id*. ¶¶ 1, 12, 22, 23, 24.

### 1. Cochrane has demonstrated a substantial likelihood of success on the merits

Cochrane argues that "[t]The Cochrane Data consists of
pricing data, bid information, customer and vendor identities
and communications, project designs and specifications,
including patented designs. . . and Cochrane employs reasonable
efforts to maintain its secrecy." *Ex Parte* Mot., ECF No 2-1 at
15. Under District of Columbia law, a trade secret is defined as
"information, including a formula, pattern, compilation,
program, device, method, technique, or process, that: (A)
Derives actual or potential independent economic value, from not
being generally known to, and not being readily ascertainable
by, proper means by another who can obtain economic value from
its disclosure or use; and (B) Is the subject of reasonable
efforts to maintain its secrecy." DC Code § 36-401(4).
Cochrane's arguments, together with the relevant factual
allegations in the verified complaint are sufficient to show
substantial likelihood of success on the merits as to Count I.

As to Count II, Cochrane argues that

> While employed by Cochrane, Filiba owed
> Cochrane fiduciary duties of loyal, fidelity,
> and confidentiality. Filiba breached those
> fiduciary obligations to Cochrane while in

11

Cochrane's employ and obtained the Cochrane Data from Cochrane's protected systems, downloaded it to his Cochrane provided computer, and transferred it to his personal media devices and/or his personal third-party cloud based file storage accounts. Cochrane took reasonable measures to maintain the secrecy of the information. Such measures include, but were not limited to: (1) a company policies to maintain secrecy; limiting access to confidential information including computer files to a "need to know" basis; and (3) prohibiting reproduction or dissemination of documents or information to third parties.

*Id.* at 16-17. As this Court has stated:

Employees, particularly managers and officers, "owe an undivided and unselfish loyalty to the corporation" during the term of their employment, "such that there shall be no conflict between duty and self-interest." *Mercer Management Consulting v. Wilde,* 920 F.Supp. 219, 233 (D.D.C.1996) (internal citations and quotation *marks omitted); see also Gov't Relations v. Howe,* Case No. 05-1081, 2007 WL 201264, *10, 2007 U.S. Dist. LEXIS 4952, *33 (D.D.C. Jan. 24, 2007); *PM Servs. Co. v. Odoi Assoc., Inc.,* Case No. 03-1810, 2006 WL 20382, *27, 2006 U.S. Dist. LEXIS 655, *84 (D.D.C. Jan. 4, 2006). Although an agent may "make arrangements or plans to go into competition with his principal before terminating his agency," he may only do so "provided no unfair acts are committed or injury done [to] his principal." *Mercer,* 920 F.Supp. at 233 (citation omitted). Specifically, in preparing to compete, an employee may not engage in "misuse of confidential information, solicitation of the firm's customers, or solicitation leading to a mass resignation of the firm's employees." *Furash & Co. v. McClave,* 130 F.Supp.2d 48, 54 (D.D.C.2001) (citing *Mercer,* 920 F.Supp. at 233).

12

*Phillips v. Mabus*, 894 F. Supp. 2d 71, 92–93 (D.D.C. 2012).
Cochrane's arguments, together with the relevant factual
allegations in the verified complaint are sufficient to show
substantial likelihood of success on the merits as to Count II.

### 2. Cochrane has demonstrated an immediate and irreparable injury will occur if an injunction is not issued

The specific facts alleged in the verified complaint
demonstrating immediate and irreparable injury are as follows:
(1) While still a Cochrane employee, Mr. Filiba used Cochrane
Data to submit a lower-priced proposal on behalf of Bear
Mountain to one of Cochrane's potential clients. Compl., ECF No.
1 ¶¶ 17–18. (2) One of Cochrane's business partners informed
Cochrane that Mr. Filiba contacted it to solicit business for
Bear Mountain. *Id*. ¶ 23. (3) Among the files containing Cochrane
Data that Mr. Filiba downloaded to his personal removable thumb
drives were files that he named "Kosedag," which is the name of
a Cochrane competitor. *Id*. ¶ 25. At the *ex parte* hearing,
Cochrane explained that information on the Bear Mountain website
indicates that Bear Mountain is sourcing its fencing materials
from Kosedag, which together with having named the files
"Kosedag" leads Cochrane to conclude that Mr. Filiba is using or
intends to use the Cochrane Data for the benefit of Kosedag.
Rough Hr'g Tr. 9:18–10:4. The Court concludes, based on the

evidence before it at this time, that Cochrane has made a sufficient showing that it will likely suffer immediate and irreparable injury as a result of further dissemination of the Cochrane Data unless a temporary restraining order is issued in this case based on Cochrane's verified allegations that: (1) defendants are in possession of Cochrane's trade secrets; (2) Mr. Filiba has disseminated those trade secrets to Bear Mountain, which has submitted a lower-priced proposal to a potential Cochrane client; and (3) defendants sought to solicit business from one of Cochrane's existing customers.

### 3. The balance of the hardships: an injunction would not substantially injure other interested parties and the grant of an injunction would further the public interest

The harm to the defendants from the entry of this Order – the requirement that defendants not destroy or disseminate information Cochrane alleges was wrongfully obtained and temporarily turn over their computer devices for imaging – is small in comparison to the threatened injury to Cochrane. Accordingly, the Court concludes that the entry of a Temporary Restraining Order would serve the public interest by ensuring that the evidence in this case is preserved and protecting the Cochrane Data until both parties have the opportunity to be heard.

## IV.  Federal Rule of Civil Procedure 65(b)(1)

A Court may issue a temporary restraining order without notice to the opposing party or its counsel pursuant to Federal Rule of Civil Procedure 65(b), which provides, in relevant part, as follows:

> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.
> (2) Contents; Expiration. Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 10 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension.

Fed.R.Civ.P. 65(b)(1)-(2). As stated by the Supreme Court,

> The stringent restrictions imposed by . . . Rule 65,[1] on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain

> circumstances . . but under federal law they
> should be restricted to serving their
> underlying purpose of preserving the status
> quo and preventing irreparable harm just so
> long as is necessary to hold a hearing, and no
> longer.

*Granny Goose Foods, Inc. v. Bhd. of Teamsters,* 415 U.S. 423,

439, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974)

Cochrane has demonstrated that specific facts in the verified complaint clearly show that it will suffer immediate and irreparable injury, loss, or damage before defendants can be heard in opposition because: (1) Mr. Filiba attempted to "destroy evidence" of transferring the files by searching how to "reset pc factory settings windows 10" and then re-installing the windows operating system. Compl., ECF No. 1 ¶ 26. (2) When confronted by a Cochrane employee about the Bear Mountain proposal submitted while he was still employed by Cochrane, Mr. Filiba back-dated his resignation email. *Id.* ¶ 19. (3) Mr. Filiba refused to return the Cochrane Data in response to Cochrane's demand letter. *Id.* ¶¶ 29, 31. Cochrane's attorney has certified in writing why notice should not be required prior to the issuance of the order. Counsel states that based on Mr. Filiba's prior conduct, defendants are likely to destroy evidence of their misappropriation of the Cochrane Data because "prior to his resignation, [Mr.] Filiba disclosed to a co-worker at Cochrane that he had been contacted by a large foreign

competitor of Cochrane[], Kosedag, Inc., regarding joining their company." Decl. of Counsel in Supp. of Ex Parte Appl. for TRO, ECF No. 9-1 at 1-2. Counsel further states that this information "coupled with the fact that Filiba had files regarding Cochrane projects saved to a subdirectory labeled 'Kosedag' on his since-erased Cochrane-provided laptop computer, leads Cochrane to believe that there is a high risk that Filiba and Bear have or may provide the Cochrane Trade Secrets to Kodesdag." *Id.* at 2. Finally counsel notes that defendants are on notice of Cochrane's intention to seek legal protection of its rights through its demand letter, and that defendants have not responded. *Id.*

The Court concludes, based on the evidence before it at this time, that Cochrane has made a sufficient showing that a temporary restraining order should be issued in this case before defendants can be heard because, based on the verified allegations, Mr. Filiba: (1) attempted to destroy the evidence of having taken the Cochrane Data; (2) misrepresented the date of his resignation; (3) failed to return the Cochrane Data in response to Cochrane's demand; (4) allegedly misappropriated the Cochrane Data after allegedly being offered employment by a competitor. The Court notes that the purpose of this TRO is to preserve the status quo by preserving and protecting the

Cochrane Data until both parties have the opportunity to be heard.

## V.   **Duty to Preserve Evidence**

Given the circumstances of this case, the Court puts the defendants on notice that each party to a lawsuit "is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *Mahaffey v. Marriot Int'l*, 898 F. Supp. 2d 54, 58 (D.D.C. 2011), citing *Arista Records, Inc. v. Sakfield Holding Co.*, 314 F. Supp. 2d, 27, 33 n.3 (D.D.C. 2004). The duty to preserve relevant evidence attaches "once [the party] anticipates litigation." Id., citing *Chen*, 839 F. Supp. 2d at 12. "A party that fails to preserve evidence 'runs the risk of being justly accused of spoliation' – defined as 'the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation – and find itself the subject of sanctions. *Chen*, 839 F. Supp. 2d at 12, citing *D'Onofrio*, 2010 WL 3324964 at *5 & n. 5.

## VI.  Conclusion

Accordingly, for the reasons set forth in this opinion and order, and as discussed at the *Ex Parte* hearing, plaintiff's motion for ex parte seizure order is **DENIED**, and the temporary relief set forth below is **GRANTED.  It is HEREBY**

(1) **ORDERED** that within 72 hours of receiving this Order, Open Text Corporation (operators of www.hightail.com) shall preserve all data associated with the account lusiof@gmail.com. Within seven days of preservation, Open Text Corporation shall notify the Court in writing that preservation has occurred; and it is

(2) **FURTHER ORDERED** that within 72 hours of receiving this Order, Google, Inc. shall preserve all data associated with the account lusiof@gmail.com. Within seven days of preservation, Google,Inc. shall notify the Court in writing that preservation has occurred; and it is

(3) **FURTHER ORDERED** that plaintiff shall facilitate service of copies of this Order by delivery to the registered agents for service of process for Google, Inc. and Open Text Corporation, with email copies to their in-house legal departments, subpoena compliance departments, or court order compliance departments; and it is

(4) **FURTHER ORDERED** that pending a hearing and determination
    on the merits of a preliminary injunction pursuant to
    Rule 65 of the Federal Rules of Civil Procedure,
    defendants are temporarily restrained from destroying,
    altering, modifying, utilizing, disposing of, or in any
    other manner changing/altering or dismantling any
    Cochrane Data in defendants' possession; and it is

(5) **FURTHER ORDERED** that defendants are temporarily
    restrained and enjoined from destroying, altering,
    modifying, dismantling, or otherwise disposing of the
    electronic media devices referenced in the Affidavit of
    Daniel E. Conners, Exhibit 5 to the Verified Complaint
    (ECF No. 1) bearing the serial numbers: Flash drives:
    BADF-311B; F0E9-334E; 3963-0E04; 2EA0-3F0B; 60A4-D23C;
    hard drive: BC04-13E9; and CD-ROM 3A5F-42D); and it is

(6) **FURTHER ORDERED** that defendants are temporarily
    restrained from destroying, altering, modifying,
    forwarding, utilizing, disposing of, or in any other
    manner changing/altering or dismantling any Cochrane Data
    in defendants' possession in defendants' email accounts
    (including without limitation lusiof@gmail.com and
    lusio@bearmountainsecurity.email); and it is

(7) **FURTHER ORDERED** that defendants are temporarily
    restrained destroying, altering, modifying, forwarding,

20

utilizing, disposing of, or in any other manner changing/altering or dismantling any Cochrane Data in defendants' cloud based file storage sites (including, without limitation, any accounts attached to lusiof@gmail.com and lusio@bearmountainsecurity.email with hightail.com); and it is

(8) **FURTHER ORDERED** that the parties shall appear before this Court, located at 333 Constitution Ave., NW, Washington, D.C., on March 15, 2018 at 5:00 pm in Courtroom 24A, for a hearing pursuant to Federal Rule of Civil Procedure 53(b)(1). Defendants shall bring the following items to the courthouse:

a. The electronic media devices bearing the serial numbers: Flash drives: BADF-311B; F0E9-334E; 3963-0E04; 2EA0- 3F0B; 60A4-D23C; hard drive: BC04-13E9; and CD-ROM 3A5F-42D;

b. Cochrane's customer and vendor contacts that Mr. Filiba allegedly removed from his office when he resigned from his position at Cochrane;

c. Any and all computer devices (including, without limitation, laptops, servers, tablet computers, cellphones, and removable media devices) used by the defendants that contain Cochrane Data;

Following this hearing, the Court intends to appoint a master pursuant to Federal Rule of Civil Procedure 53 to take temporary custody of the items described above for the limited purpose of having a forensic computer expert create images of the data on the devices, placing the images in a sealed evidence bag and maintaining the images in the custody of the special master, pending agreement amongst the parties, or future Court order, regarding the proper scope and terms of review of the images; and immediately returning defendants' devices upon the completion of the imaging of the devices. By no later than 5:00 pm on March 13, 2018, plaintiff is directed to recommend to the Court via a notice on the record an independent special master and an independent forensic computer expert. Plaintiff is directed to consult "Trade Secret Seizure Best Practices Under the Defend Trade Secrets Act of 2016" in making these recommendations. This source is available at the following link:

https://www.fjc.gov/sites/default/files/2017/DTSA_Best_Prac
tices_FJC_June_2017.pdf; and it is

**(9)** **FURTHER ORDERED** that the parties shall appear before this Court, located at 333 Constitution Ave., NW, Washington, D.C., on March 22, 2018 at 2:00 pm in Courtroom 24A, for a hearing and determination on the merits of a

22

preliminary injunction enjoining defendants from using, moving, forwarding, modifying, or destroying any Cochrane Data that is within defendant's possession, during the pendency of this action; and it is

(10) **FURTHER ORDERED** that this Temporary Restraining Order shall remain in effect until the date for the hearing on preliminary injunction set forth above, or until such further dates as set by the Court or stipulated to by the parties; and it is

(11) **FURTHER ORDERED** that the sealed nature of this order notwithstanding, Cochrane shall serve a copy of the Verified Complaint, the *Ex Parte* Request, this Order, and all other documents in the record on defendants and on known counsel for defendants by no later than 72 hours from the date of this Order; and it is

(12) **FURTHER ORDERED** that based on the facts of this case, the Court concludes that no security is required pursuant to Federal Rule of Civil Procedure 65(c). Under this rule, district courts have broad discretion "to determine the appropriate amount of an injunction bond." *DSE, Inc. v. US* 169 F.3d 21, 33 (D.C. Cir. 1999). The purpose of this Temporary Restraining Order is to maintain the status quo with regard to the evidence in this case. Consequently,

the Court concludes that payment of a security by

Cochrane is unnecessary at this time.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            March 9, 2018**